IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**MCKINZIE L. REES**

        Plaintiff,

v.

**CITY OF EDGEWATER, EDGEWATER POLICE DEPARTMENT, CHIEF JOHN MACKEY, in his individual capacity, COMMANDER MARK HAMILTON, in his individual capacity, SERGEANT NATE GEERDES, in his individual capacity, SERGEANT JASON FORSYTHE, in his individual capacity, SERGEANT BRANDON CHALLIS, and CITY MANAGER DAN MAPLES, in his individual capacity.**

        Defendants.

---

## COMPLAINT AND DEMAND FOR A JURY TRIAL

---

Plaintiff, McKinzie Rees, by her undersigned counsel, complains against Defendants, City of Edgewater, Edgewater Police Department, Chief John Mackey, Commander Mark Hamilton, Sergeant Nate Geerdes, Sergeant Jason Forsythe, Sergeant Brandon Challis, and City Manager Dan Maples, as follows:

## I.     PARTIES

1. At all times material hereto, Plaintiff was a female citizen of the United States of America and the state of Colorado.

2. McKinzie Rees ("Ofc. Rees" or "Plaintiff") was an employee of the City of Edgewater ("Edgewater" or "Defendant Edgewater") from July 3, 2019, through April 3, 2022.

3.      The City of Edgewater is a city in the state of Colorado pursuant to C.R.S. § 31-1-101(2).

4.      The City of Edgewater is a "person" as that term is defined under 42 U.S.C. § 1983.

5.      The Edgewater Police Department (the "EPD," "Defendant EPD," or the "Department") is a law enforcement agency of the City of Edgewater pursuant to its police powers in C.R.S. § 31-15-401, with its principal place of business at 1800 N. Harlan Street, Edgewater, CO 80214.

6.      At all relevant times, Chief John Mackey ("Chief Mackey" or "Defendant Mackey") was an employee of Edgewater and the EPD and a citizen of Colorado.

7.      Defendant Mackey is a "person" as that term is defined under 42 U.S.C. § 1983.

8.      Defendant Mackey was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

9.      Pursuant to Sec. 2-6-10 of the City of Edgewater Municipal Code (the "City Code"), Defendant Mackey was the EPD Chief of Police from the time Plaintiff became employed in July 2019 until about December 2021.

10.     At all relevant times, Commander Mark Hamilton ("Cmdr. Hamilton" or "Defendant Hamilton") was an employee of Edgewater and the EPD and a citizen of Colorado.

11.     Defendant Hamilton is a "person" as that term is defined under 42 U.S.C. § 1983.

12.     Defendant Hamilton was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

13.     At all relevant times, Sergeant Nate Geerdes ("Sgt. Geerdes" or "Defendant Geerdes") was an employee of Edgewater and the EPD and a citizen of Colorado.

14.     Defendant Geerdes is a "person" as that term is defined under 42 U.S.C. § 1983.

15.     Defendant Geerdes was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

16.     At all relevant times, Sergeant Jason Forsythe ("Sgt. Forsythe" or "Defendant Forsythe") was an employee of Edgewater and the EPD and a citizen of Colorado.

17.     Defendant Forsythe is a "person" as that term is defined under 42 U.S.C. § 1983.

18.     Defendant Forsythe was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

19.     At all relevant times, Sergeant Brandon Challis ("Sgt. Challis" or "Defendant Challis") was an employee of Edgewater and the EPD and a citizen of Colorado.

20.     Defendant Challis is a "person" as that term is defined under 42 U.S.C. § 1983.

21.     Defendant Challis was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

22.     At all relevant times, City Manager Dan Maples ("City Mgr. Maples" or "Defendant Maples") was an employee of Edgewater and a citizen of Colorado.

23.     Defendant Maples is a "person" as that term is defined under 42 U.S.C. § 1983.

24.     Defendant Maples was acting under the color of law when he took adverse actions related to Plaintiff's employment as alleged herein.

25.     After the resignation of Chief Mackey, Defendant Maples proceeded to appoint himself as the purported Acting Police Chief for the EPD from about January 2022 through the remainder of Plaintiff's employment which ended on April 3, 2022.

26.     Defendants Edgewater and EPD were acting under the color of law when they took adverse actions related to Plaintiff's employment as alleged herein.

27. Defendants Edgewater and EPD have a responsibility to properly train and supervise their employees or agents regarding equal employment opportunity principles and the statutory and constitutional rights of their employees or agents.

28. At all times material hereto, Defendants Edgewater and EPD were employers in the state of Colorado within the meaning of 42 U.S.C. § 2000e(b).

## II.    JURISDICTION AND VENUE

29. This Court has original jurisdiction of the subject matter asserted by the allegations contained in the complaint pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3).

30. The acts complained of herein were committed, or had their principal effect, within the District of Colorado and therefore venue for this civil action is proper pursuant to 28 U.S.C. § 1391(b)(e) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

## III.    ADMINISTRATIVE PROCEDURES

31. Plaintiff has fully complied with all administrative prerequisites of jurisdiction in this Court pursuant to 42 U.S.C. § 2000e-5.

32. On May 24, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 541-2022-02539.

33. On January 11, 2023, Plaintiff filed an amendment to her Charge of Discrimination with the EEOC.

34. On March 30, 2023, Plaintiff received a Dismissal and Notice of Right to Sue from the EEOC.

35. Plaintiff has exhausted all administrative remedies and this action is timely filed.

## IV.    GENERAL ALLEGATIONS

36.    Plaintiff incorporates by reference and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

37.    Plaintiff was employed by Defendants Edgewater and EPD as a Police Officer from July 3, 2019, through April 3, 2022.

38.    From October of 2019 to June of 2020, Ofc. Rees was the only female police officer at the EPD.

39.    From June 2020 through April 3, 2022, Ofc. Rees was one of only three female police officers at the EPD.

Sexual Assault by Sgt. Geerdes – December 13, 2019

40.    In December 2019, Sgt. Geerdes was superior to Plaintiff in the EPD chain of command.

41.    In December 2019, Sgt. Geerdes was in a supervisory role over Plaintiff.

42.    On December 13, 2019, Ofc. Rees attended the Edgewater Christmas party with her boyfriend.

43.    After the party, Ofc. Rees traveled to a local bar in an Uber with her boyfriend and Sgt. Geerdes.

44.    While in the back seat of the Uber, Sgt. Geerdes placed his hand on Ofc. Rees's thigh.

45.    At the bar, Ofc. Rees went to the restroom.

46.    When Ofc. Rees came out of the restroom, Sgt. Geerdes was waiting for her in the hallway. Sgt. Geerdes tried to kiss her and touched her sexually without her consent. Ofc. Rees quickly turned and left the hallway.

5

47.     Ofc. Rees quickly left the bar with her boyfriend.

48.     The following day, Ofc. Rees informed a coworker, Officer Scott Green ("Ofc. Green"), of the sexual assault. Ofc. Green chuckled and said, "I knew he had the hots for you" and "with this dirt, we'll be commander in chief in no time."

49.     Because she was a recent hire, Ofc. Rees did not make a formal report and feared retaliation if she reported a fellow police officer for sexual assault.

50.     Ofc. Rees knew Sgt. Geerdes and City Mgr. Maples engaged in social interactions outside of their employment with Edgewater and the EPD.

Sgt. Forsythe and Cmdr. Hamilton Learn of Ofc. Rees's Sexual Assault

51.     Upon information and belief, Ofc. Green did not initially report Sgt. Geerdes for sexually assaulting Ofc. Rees.

52.     Upon information and belief, in early 2020, Ofc. Green reported the sexual assault to Sgt. Forsythe.

53.     At about this time, it became known that Cmdr. Hamilton was planning to retire.

54.     Sgt. Forsythe and Sgt. Geerdes were competing for promotion to Commander to replace Cmdr. Hamilton.

55.     Upon information and belief, in order to eliminate Sgt. Geerdes from the running for Cmdr. Hamilton's replacement, Sgt. Forsythe reported Sgt. Geerdes's sexual assault of Ofc. Rees to Cmdr. Hamilton.

56.     Cmdr. Hamilton chose not to address the sexual assault and failed to follow Edgewater and EPD policies on sexual discrimination, harassment, and intimidation.

57.     EPD Policy 327.4.1(f) on Discriminatory Harassment requires that supervisors and managers notify "the Chief of Police or the Finance Director in writing of the circumstances

surrounding any reported allegations or observed acts of discrimination, harassment, or retaliation no later than the next business day."

58.     Ofc. Rees was unaware at the time that Sgt. Geerdes's sexual assault of her had been reported to either Sgt. Forsythe or Cmdr. Hamilton.

Ofc. Rees Assigned New Patrol Shift

59. On January 1, 2020, Ofc. Rees was placed on a new patrol shift during which she worked with Corporal Robert Brink ("Cpl. Brink").

60. At the time, both Cpl. Brink and Ofc. Rees were supervised by Sgt. Forsythe.

61. While working the same patrol shift, Cpl. Brink regularly would not respond to calls for service and Ofc. Rees had to answer the majority of the calls.

62. This conduct by Cpl. Brink resulted in Ofc. Rees being required to prepare more incident reports than Cpl. Brink.

63. In February 2020, Ofc. Rees reported Cpl. Brink's behaviors towards her to Sgt. Forsythe and asked him to speak to Cpl. Brink.

64. Ofc. Rees was in a car accident on February 25, 2020, and was placed on light duty until April 22, 2020.

Sgt. Forsythe and Cpl. Brink Retaliate Against Ofc. Rees – April 2020

65. When Ofc. Rees returned to regular duty on or around April 23, 2020, the issues with Cpl. Brink and Sgt. Forsythe worsened.

66. During one of their shifts, Ofc. Rees and Cpl. Brink received 11 calls for service and Ofc. Rees took every single one.

67. When Cpl. Brink responded to a call as back up, he would not get out of his car or assist Ofc. Rees.

68. In May 2020, Ofc. Rees again went to Sgt. Forsythe for help but asked him not to tell Cpl. Brink she had said anything because she worried it would only make things worse.

69. When the problems persisted, Ofc. Rees asked Sgt. Forsythe on May 20, 2020, to move her to a different shift so that she would not have to work with Cpl. Brink.

70. Sgt. Forsythe did not respond to Ofc. Rees's request.

71. In late May or early June 2020, Ofc. Rees spoke with Cmdr. Hamilton about her concerns with Cpl. Brink's treatment of her and Sgt. Forsythe's lack of response.

72. Cmdr. Hamilton stated he would speak to both Cpl. Brink and Sgt. Forsythe, but their treatment of Ofc. Rees only worsened.

73. In retaliation for reporting him to Cmdr. Hamilton, Cpl. Brink stopped speaking to Ofc. Rees entirely.

74. In June 2020, Sgt. Forsythe demoted Ofc. Rees to working the night shift.

75. Sgt. Forsythe stated the reason for the demotion was that Ofc. Rees needed to "catch up" on her police incident reports.

76. Ofc. Rees was not materially behind in her reports, but was often rushed or delayed in submitting them due to her having to file a significantly higher volume of reports because Cpl. Brink would not respond to incidents, requiring Ofc. Rees to be the reporting officer.

77. Night shifts are busier and higher risk than day shifts.

Chief Mackey Learns of Sgt. Geerdes's Sexual Assault of Ofc. Rees – November 2020

78. In November of 2020, Ofc. Green resigned from the EPD.

79. In his exit interview, Ofc. Green informed Chief John Mackey that Sgt. Geerdes had sexually assaulted Ofc. Rees in December 2019.

80. Ofc. Rees was not aware that Ofc. Green told Chief Mackey about the sexual assault

by Sgt. Geerdes.

81. On November 19, 2020, Ofc. Rees was surprised when Sgt. Forsythe and Cpl. Brink required her to meet with them in council chambers and directed her to tell them about the sexual assault by Sgt. Geerdes.

82. Because Ofc. Rees feared further retaliation and because of how she had been treated when she reported the issues with Cpl. Brink, she repeatedly told Sgt. Forsythe and Cpl. Brink that she did not want to file a complaint against Sgt. Geerdes.

83. Sgt. Forsythe instructed Ofc. Rees that it was in her "best interest" to tell them about how Sgt. Geerdes had sexually assaulted her.

84. Ofc. Rees was compelled to respond to Sgt. Forsythe because he was her superior officer and was directing her to respond.

85. She was required to answer questions about the graphic details of the assault.

86. At the end of the meeting, Ofc. Rees was visibly emotionally upset, and Sgt. Forsythe instructed her to go home for the remainder of her shift that day.

87. Subsequently, Ofc. Rees was required to meet with Cmdr. Hamilton.

88. Ofc. Rees met with Cmdr. Hamilton and told him she had been directed to tell Sgt. Forsythe and Cpl. Brink about the sexual assault.

89. Because she feared additional retaliation, she told Cmdr. Hamilton that she did not want to file a formal complaint against Sgt. Geerdes.

90. In or around November 2020, Sgt. Challis was instructed to look into call volumes to investigate Ofc. Rees's claims that she was taking the majority of calls for service.

91. Sgt. Challis did look into call volumes and verified Ofc. Rees's claims, but nothing was done to document or address the discrepancy.

<u>Ofc. Rees Meets with Ms. Kirkpatrick and Ms. Beery – December 2020</u>

92. After their November 19, 2020, conversation with Ofc. Rees, Sgt. Forsythe and Cpl. Brink contacted Nichole Kirkpatrick ("Ms. Kirkpatrick"), Finance Director and Administrative Services Director for Edgewater, about the sexual assault of Ofc. Rees by Sgt. Geerdes.

93. Edgewater did not have a Human Resources department or any Human Resources personnel at this time.

94. Upon information and belief, Ms. Kirkpatrick was not a trained Human Resources professional.

95. On November 27, 2020, Ms. Kirkpatrick contacted Ofc. Rees to schedule a meeting to discuss the sexual assault.

96. In or around the first week of December 2020, Ofc. Rees met with Ms. Kirkpatrick and Carmen Beery ("Ms. Beery") from the Edgewater City Attorney's office.

97. Because she feared retaliation, Ofc. Rees told Ms. Kirkpatrick and Ms. Beery that she did not want to file a formal complaint or participate in any investigation into her sexual assault by Sgt. Geerdes.

98. On December 10, 2020, Ofc. Rees received an email from Ms. Kirkpatrick with a written summary of the conversation Ofc. Rees had with Sgt. Forsythe and Cpl. Brink on November 19, 2020, regarding her sexual assault by Sgt. Geerdes.

99. Sgt. Forsythe had written the summary, which included explicit details of the sexual assault and several misstatements of fact.

100.    Ms. Kirkpatrick asked Ofc. Rees to review and sign the summary written by Sgt. Forsythe.

101.    Ms. Kirkpatrick stated this summary would only be placed in Ofc. Rees's

personnel file and that Ofc. Rees was signing it "with the understanding that you are not making a formal complaint under the City of Edgewater's Employee Handbook."

102.    Ofc. Rees edited the graphic details and misstatements out of the report written by Sgt. Forsythe because she did not want the explicit details of the sexual assault to be included in a report that would be in her personnel file because she would be a stigmatized as being a victim and that would affect her current employment and her ability to obtain future employment in law enforcement.

103.    Ofc. Rees submitted the statement to Ms. Kirkpatrick to be placed in her personnel file.

I.A. Investigation of Sexual Assault – January 2021

104.    On or around December 28, 2020, one or more Internal Affairs ("I.A.") investigations into Sgt. Geerdes, Sgt. Forsythe, and Cmdr. Hamilton regarding Sgt. Geerdes's sexual assault of Ofc. Rees began.

105.    Ofc. Rees was first informed of these investigations in January 2021.

106.    Ofc. Rees was asked to meet with Investigator Sam Realmuto ("Mr. Realmuto") of Santo Consulting, LLC regarding these internal investigations.

107.    When Ofc. Rees met with Mr. Realmuto in January 2021, she tried to talk to him about the hostile work environment that Sgt. Forsythe and Cpl. Brink had created; however, Mr. Realmuto only wanted to discuss Sgt. Geerdes's sexual assault of Ofc. Rees.

108.    During their meeting, Mr. Realmuto asked Ofc. Rees about her sexual assault complaint.

109.    When Ofc. Rees informed him that she had not filed a complaint, he showed her the summary that she had signed for Ms. Kirkpatrick.

110.     Mr. Realmuto told Ofc. Rees that she could be compelled to speak about this written statement as part of the internal investigations.

111.     Ofc. Rees sent an email to Ms. Kirkpatrick on January 22, 2021, to reiterate that she did not want to file a formal complaint or participate in the internal investigations of Sgt. Geerdes, Sgt. Forsythe, or Cmdr. Hamilton.

Meeting with KRW Associates – January 2021

112.     In or around January 2021, Ofc. Rees met with Jerry Williams ("Mr. Williams") and Lynn Johnson ("Mr. Johnson") of KRW Associates.

113.     KRW Associates was conducting a survey of Edgewater's organizational and strategic planning efforts.

114.     Ofc. Rees told Mr. Williams and Mr. Johnson about the harassment and retaliation she was experiencing.

115.     Mr. Williams and Mr. Johnson offered to find Ofc. Rees a job at another city agency if she promised not to sue Edgewater.

Harassment and Retaliation Continue and Increase

116.     After the investigation into the sexual assault began in late December 2020, Sgt. Forsythe's harassment of Ofc. Rees increased and he began overly scrutinizing her work.

117.     Sgt. Forsythe would send Ofc. Rees's reports back to her for revision if there were minor errors, such as missing punctuation.

118.     For similarly situated male officers, Sgt. Forsythe would ignore these same kinds of errors, and he treated male officers more favorably than Ofc. Rees.

119.     Sgt. Forsythe would also submit Ofc. Rees's reports to Internal Affairs for investigation without first giving her the opportunity to explain or correct them.

120.    If there was a substantial mistake in a similarly situated male officer's report, Sgt. Forsythe would allow that male officer to explain their mistake and revise their report.

121.    Sgt. Forsythe also frequently changed Ofc. Rees's schedule, making it difficult for her to have a healthy work-life balance.

122.    Other male officers were not subjected to this same treatment.

123.    After January 8, 2021, Sgt. Forsythe also stopped socially interacting with Ofc. Rees at work.

<u>Ofc. Rees Files a Formal Hostile Work Environment Complaint – February 2021</u>

124.    On February 20, 2021, Ofc. Rees sent a formal complaint to Cmdr. Hamilton regarding the retaliation from and the hostile work environment created by Sgt. Forsythe and Cpl. Brink.

125.    On February 23, 2021, Cmdr. Hamilton stated he would forward Ofc. Rees's complaint to Chief Mackey.

126.    On March 5, 2021, Chief Mackey requested that Ofc. Rees send him a copy of her complaint in Microsoft Word format.

127.    Mr. Realmuto was again assigned to review Ofc. Rees's complaint.

128.    No one interviewed or followed up with Ofc. Rees regarding her formal complaint.

129.    Two weeks later, Cmdr. Hamilton notified Ofc. Rees that Mr. Realmuto had found her complaint to have no merit even though her complaint had not been fully investigated.

<u>Ofc. Rees Meets with City Mgr. Maples – March 2021</u>

130.    In March 2021, Ofc. Rees requested a meeting and met with City Manager Dan Maples to discuss how she was being treated by the Department.

131.     City Mgr. Maples told her the treatment she was experiencing would not continue and stated that he wanted to "lean on" her to make sure no one else at the EPD would be subjected to the same discrimination, harassment, retaliation, and assault she had experienced.

132.     City Mgr. Maples did not require the commencement of any investigation into Ofc. Rees's complaints.

133.     City Mgr. Maples did not take any corrective measures to rid Ofc. Rees's workplace of the hostile work environment.

134.     Upon information and belief, City Mgr. Maples did not institute any disciplinary action against Sgt. Forsythe, Cpl. Brink, or any command staff.

135.     The treatment of Ofc. Rees did not improve, and the discrimination, retaliation, and harassment continued.

Sgt. Geerdes Leaves EPD – March 2021

136.     The internal investigation(s) into Sgt. Geerdes, Sgt. Forsythe, and Cmdr. Hamilton regarding Sgt. Geerdes's sexual assault of Ofc. Rees was concluded on February 16, 2021.

137.     On February 21, 2021, Sgt. Geerdes submitted his notice of resignation effective March 15, 2021, as a result of the internal investigation into his sexual assault of Ofc. Rees.

138.     From February 21, 2021, to March 15, 2021, Sgt. Geerdes was allowed to continue to work from his home with pay performing police duties for the EPD and Edgewater.

139.     Edgewater and EPD did not submit to the Colorado Department of Law, Peace Officer Standards and Training ("POST") department any notification that Sgt. Geerdes resigned while under investigation.

140.     Edgewater and/or the EPD provided false or misleading information for Sgt.

Geerdes in his search and application for new employment, allowing him to be employed by the City of Blackhawk, Colorado.

141.    The City of Blackhawk employed Sgt. Geerdes from September 27, 2021, until his termination of employment on December 6, 2022, when Sgt. Geerdes was criminally charged in Jefferson County with unlawful sexual contact and retaliation against a witness.

142.    After Sgt. Geerdes's employment ended in March 2021, Chief Mackey met with Ofc. Rees and told her that she had "ruined a good cop's career" and said none of this would have happened if she had kept her mouth shut.

Retaliation from Sgt. Forsythe Increases – Spring 2021

143.    In or around March or April 2021, Ofc. Rees again requested to switch shifts to change her work environment and not be supervised by Sgt. Forsythe or be on the same shift as Cpl. Brink.

144.    Sergeant Randy Palmer ("Sgt. Palmer") approved her request.

145.    After her shift change, she learned that Cpl. Brink was showing her reports to other officers in the patrol room and making fun of her.

146.    Prior to about April 2021, Ofc. Rees would sometimes have her sister, a fellow Edgewater employee, accompany her on calls for service ("ride-along").

147.    Ofc. Rees also allowed her sister to participate in interviews with victims.

148.    Ofc. Rees was told by Sgt. Challis that she could no longer have her sister participate in a ride-along.

149.    Other male officers were still permitted to have Plaintiff's sister ride along on calls for service.

150.    In or around June 2021, Ofc. Rees was again moved to the night shift by Sgt.

Forsythe in retaliation for allowing her sister to sit in on a victim interview with her.

151.    In or around August 2021, Ofc. Rees was moved to the night shift for a third time by Sgt. Forsythe, even though he was no longer her supervisor.

152.    Ofc. Rees had seniority, which entitled her to the privilege of not working nights.

153.    Ofc. Rees remained on the night shift from August 2021 until her employment was terminated on April 3, 2022.

154.    Sgt. Palmer had a conversation with Sgt. Forsythe in which Sgt. Forsythe said he was going to take Ofc. Rees off of liquor enforcement.

155.    When Sgt. Palmer said that Ofc. Rees would be pleased to not perform liquor enforcement, Sgt. Forsythe changed his mind and said that he did not want to reward Ofc. Rees.

Sgt. Forsythe Initiates Internal Investigation of a Police Pursuit Against Ofc. Rees

156.    In about August 2021, Sgt. Forsythe opened an Internal Affairs investigation into a pursuit conducted by Ofc. Rees even though he was not her supervisor at the time.

157.    When Commander George Mumma ("Cmdr. Mumma") joined the EPD in August 2021, he reviewed the report of Ofc. Rees's pursuit which Sgt. Forsythe had submitted to Internal Affairs for investigation.

158.    Cmdr. Mumma believed this internal investigation was frivolous and dismissed it, instead allowing Ofc. Rees to make the minor changes to her report needed to better reflect the pursuit.

Hostile Workplace Investigation – September 2021

159.    Cmdr. Mumma observed that Sgt. Forsythe and Cpl. Brink were targeting Ofc. Rees.

160.    Cmdr. Mumma then asked Sgt. Palmer if Sgt. Forsythe treated Ofc. Rees

differently than other officers, which Sgt. Palmer confirmed.

161.    In September 2021 Cmdr. Mumma asked Edgewater to launch an investigation into the hostile work environment on Ofc. Rees's behalf.

162.    At Cmdr. Mumma's request, Ofc. Rees updated her February 20, 2021, complaint given to Cmdr. Hamilton to include the additional instances of retaliation and harassment that had occurred since.

163.    An investigation began on September 1, 2021, some six months after Ofc. Rees's initial written complaint against Sgt. Forsythe and Cpl. Brink.

164.    Ofc. Rees received a letter dated September 1, 2021, from Ms. Beery of the Edgewater City Attorney's Office, notifying her of the Confidential Workplace Investigation.

165.    Investigations Law Group, LLC, an independent firm, was assigned to investigate Ofc. Rees's complaint.

166.    The investigation was not an Internal Affairs investigation under the EPD Policy Manual, but rather was conducted pursuant to the Edgewater Employee Handbook.

Social Media Policy Violation and Internal Affairs Investigation 2021-03 – October 2021

167.    In retaliation for the confidential workplace investigation into her claims of a hostile work environment, Ofc. Rees was subjected to another Internal Affairs investigation.

168.    On October 15, 2021, Cmdr. Hamilton issued a memorandum to Ofc. Rees with allegations that she violated the EPD policy on social media.

169.    The Lakewood Police Department handled the investigation because of the ongoing hostile work environment investigation.

170.    On December 14, 2021, Ofc. Rees received a permanent letter in her personnel file as a result of this investigation.

171.     In 2020, two male police officers, Sgt. Challis and Officer Chad Slaven ("Ofc. Slaven"), violated the same policy and were not subjected to I.A. investigations.

172.     Both Sgt. Challis and Ofc. Slaven received letters in their personnel files, but their letters were not permanent and were discarded after one year.

173.     Sgt. Challis and Ofc. Slaven were supervised by Sgt. Geerdes, Sgt. Forsythe, and Sgt. Palmer at the time of their violation of the social media policy.

174.     Sgt. Forsythe retaliated against Ofc. Rees for the Confidential Workplace Investigation by notifying Sgt. Challis, Ofc. Rees's supervisor at the time, of the social media policy violation.

175.     At the encouragement of Sgt. Forsythe, Ofc. Rees received a harsher punishment than Sgt. Challis and Ofc. Slaven.

<u>Commander Hamilton Announces Retirement and Chief Mackey Resigns – December 2021</u>

176.     In December 2021, Cmdr. Hamilton officially announced that he would be retiring in July of 2022, but actually retired on December 9, 2022.

177.     Chief Mackey resigned from the EPD in December 2021.

178.     Upon information and belief, after Chief Mackey's resignation, Cmdr. Mumma was appointed as Acting Chief of Police, but either declined the appointment or renounced the appointment shortly afterwards.

179.     Cmdr. Mumma, the only commanding officer who had advocated for Ofc. Rees, left employment with the EPD and Edgewater on February 10, 2022.

180.     Due to Chief Mackey's resignation in December 2021, Internal Affairs investigations were being delayed until an Acting or Interim Chief of Police was assigned or a new Chief of Police was hired.

Third Internal Affairs Investigation 2022-01 Against Ofc. Rees – February 16, 2022

181.    Six days after the resignation of Cmdr. Mumma, on February 16, 2022, Ofc. Rees was notified by Cmdr. Hamilton of an Internal Affairs investigation into an arrest she had made on December 21, 2021.

182.    On December 21, 2021, Ofc. Rees located a stolen vehicle with two suspects inside.

183.    Both suspects were detained and transported to the Department for processing.

184.    After the booking process was completed, Ofc. Rees transported the female suspect to the Jefferson County Jail.

185.    EPD Policy 901.13 states that an arrestee being booked into the Jefferson County Jail will have their biological sample ("DNA") and fingerprints collected at the jail by jail staff.

186.    The Jefferson County Jail staff refused to perform these procedures and did not collect the DNA sample or fingerprints.

187.    The jail staff evaluated the suspect and determined that Ofc. Rees needed to obtain medical clearance before the suspect could be booked into the jail.

188.    Ofc. Rees then transported the suspect to Lutheran Hospital.

189.    Once at the hospital, the suspect told a nurse of all of her medical conditions, which were significant.

190.    The nurse gave the suspect a hospital gown and stated to Ofc. Rees that the suspect was being admitted to the hospital.

191.    EPD Policy 335.2.1 states that for an arrestee who is released pending charges, the arresting officer shall obtain a DNA sample according to instructions in the DNA collection kit.

192.    Ofc. Rees contacted Officer Paul Perez ("Ofc. Perez"), to bring a buccal swab to the hospital so Ofc. Rees could collect the suspect's biological sample ("DNA").

193.    Ofc. Perez brought the buccal swab to the hospital, and Ofc. Perez's trainee, Officer Altman ("Ofc. Altman"), collected the sample.

194.    Because the nurse said that the suspect was being admitted to the hospital, Ofc. Rees released the suspect from her custody pending charges.

195.    Given the suspect's extensive medical problems, Ofc. Rees did not want the EPD to be responsible for her medical bills which, per the policies of the EPD, would have been Edgewater's financial responsibility had the suspect remained in police custody.

196.    Pursuant to EPD Policy, Ofc. Rees wrote a warrant so the suspect could be arrested after she was released from the hospital.

197.    When Ofc. Rees later checked the buccal swab Ofc. Altman had collected from the suspect, she realized there was not enough of a biological sample for the swab to be submitted to the Colorado Bureau of Investigation ("CBI").

198.    Ofc. Rees knew that the CBI would not accept a sample that was not accompanied by fingerprint cards, which the Jefferson County Jail staff had failed to collect.

199.    For these reasons, Ofc. Rees shredded the buccal swab she had collected at the hospital.

200.    Ofc. Rees submitted an incident report on the December 21, 2021, stolen vehicle call for service.

201.    On December 29, 2021, Sgt. Challis sent an email to Ofc. Rees with a list of changes for her to make to her report.

202.    On January 4, 2022, Sgt. Challis and Ofc. Rees spoke in person, and Sgt. Challis

instructed Ofc. Rees to rework her report to state that she had obtained a buccal swab since one was attached to the case.

203.    Ofc. Rees explained to Sgt. Challis that the attached buccal swab was for the male suspect arrested on December 21, 2021, but that the buccal swab for the female suspect had been destroyed because it did not contain a sufficient sample amount and was not accompanied by fingerprints because the Jefferson County Jail did not take prints.

204.    Sgt. Challis then told Ofc. Rees to not put the buccal swab or fingerprints information in her report if she did not have them.

205.    After speaking with Sgt. Challis, Ofc. Rees again revised her report to state that she had been unable to collect fingerprints or a buccal swab because that was what Sgt. Challis, her superior officer, had directed her to do.

206.    After resubmitting her report, Sgt. Challis approved it and asked Ofc. Rees to complete the felony filing for the case.

207.    Subsequently, Sgt. Challis conducted a "Formal Complaint" regarding Ofc. Rees's report, which led to Edgewater Police Internal Affairs case 2022-01 against her.

208.    On February 16, 2022, Cmdr. Hamilton sent Ofc. Rees a memorandum assigning I.A. 2022-01 to the Lakewood Police Department for investigation.

209.    The EPD still subjected Ofc. Rees to an Internal Affairs investigation despite this policy delaying Internal Affairs investigations.

Results of Hostile Workplace Investigation – March 2022

210.    Prior to the conclusion of I.A. 2022-01, the September 2021 investigation into Ofc. Rees's complaints of a hostile work environment against Sgt. Forsythe and Cpl. Brink was completed in March 2022.

211.    On March 9, 2022, Ofc. Rees was notified that the investigator had "found some allegations substantiated and some not."

212.    Sgt. Forsythe was found to have forced Ofc. Rees into the meeting with him and Cpl. Brink on November 19, 2020, regarding the December 2019 sexual assault against her by Sgt. Geerdes.

213.    Sgt. Forsythe was also found to have treated Ofc. Rees differently by recommending an Internal Affairs investigation be initiated over her vehicle pursuit of June 8, 2021, which Cmdr. Mumma reviewed and dismissed in August 2021.

214.    Upon information and belief, Sgt. Forsythe was not disciplined or counseled after these findings were issued.

Results of Internal Affairs Investigation 2022-01 – April 2022

215.    The February 2022 I.A. investigation of Ofc. Rees was completed in March 2022.

216.    On April 3, 2022, City Mgr. Maples issued Findings and Dispositions in association with I.A. 22-01 against Ofc. Rees.

217.    City Mgr. Maples found that Ofc. Rees had violated policy by:

    a) failing to disclose that she had destroyed the buccal swab in her initial report;
    b) not writing a sufficiently detailed report;
    c) leaving the suspect at the hospital when she had not been admitted;
    d) failing to check with a supervisor before leaving the suspect at the hospital; and
    e) not obtaining all relevant information from the hospital before leaving the suspect.

218.    On April 3, 2022, City Mgr. Maples also issued a Notice of Proposed Discipline against Ofc. Rees, proposing termination for his findings that she had violated EPD Policies 318.6.8 and 320.1.1.

The Edgewater Charter, City Code, EPD Policy, and Colorado Law Prevent Adjudication by
City Manager Maples

219. From February 16, 2022, to the date of Ofc. Rees's termination on April 3, 2022,
the EPD did not have an Acting Chief of Police.

220. Cmdr. Hamilton was not appointed as Acting Chief of Police.

221. EPD Policy 1009 is the EPD Internal Affairs Policy which can only be exercised
by the Chief of Police, who is required to be a certified Peace Officer.

222. City Mgr. Maples was not a Peace Officer as defined by C.R.S. §§ 16-2.5-105
through 16-2.5-148.

223. City Manager Maples was not a certified Peace Officer as required by C.R.S. §
24-31-305.

224. City Mgr. Maples is not certified by POST pursuant to C.R.S. § 16-2.5-102 and
EPD Policy 101.

225. Section 2-6-20(a) of the City Code requires the Chief of Police to designate "an
officer of the department to serve as Acting Chief during times when the Chief of Police is
absent or unable to act as Chief of Police."

226. Section 2-6-20(b) provides that, in the event the Chief of Police is unable to act or
fails to designate an Acting Chief, "the City Manager shall designate some other **officer** to serve
as Acting Chief" (emphasis added).

227. Section 2-6-20(d) requires any officer serving as Acting Chief or Interim Chief to
hold the rank of sergeant or higher.

228. City Mgr. Maples did not exercise his authority pursuant to City Code Sec. 2-6-
20(c) or Article 9.1 of the Home Rule Charter of the City of Edgewater (the "Edgewater

Charter") to appoint an Interim or Acting Chief of Police during February, March, and April 2022.

229.    Instead, he unlawfully installed himself as *de facto* Police Chief in violation of Colorado law and Edgewater's and EPD's own rules, regulations, and policies.

230.    Edgewater Charter Art. 9.2(2) authorizes the City Manager to hire and terminate Department Heads of Edgewater but the Department Head reserves the right to hire and terminate from employment any of his/her subordinate employees.

231.    Ofc. Rees was the subordinate employee of the EPD Chief of Police.

232.    In violation of the Edgewater Charter, the City Code, EPD Policy, and Ofc. Rees's constitutional rights, City Mgr. Maples appointed himself "as the ultimate supervisor of the Police Department due to the current vacancy in the office of the Chief of Police" and issued Findings and Dispositions and Proposed Discipline regarding I.A. 2022-01, which resulted in his unlawful termination of Plaintiff's employment.

233.    EPD 1009.10.1 states:

> Upon receipt of any written recommendation for disciplinary action, the Chief of Police shall review the recommendation and all accompanying materials. The Chief of Police may modify any recommendation and/or may return the file to the Operations Commander for further investigation or action.
>
> Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall determine the amount of discipline, if any, that should be imposed. In the event disciplinary action is proposed, the Chief of Police shall provide the member with a written notice and the following:
> > (a) Access to all of the materials considered by the Chief of Police in recommending the proposed discipline.
> > (b) An opportunity to respond orally or in writing to the Chief of Police within five days of receiving the notice.
> > > 1. Upon a showing of good cause by the member, the Chief of Police may grant a reasonable extension of time for the member to respond.

2.  If the member elects to respond orally, the presentation shall be recorded by the Department. Upon request, the member shall be provided with a copy of the recording.

Once the member has completed his/her response or if the member has elected to waive any such response, the Chief of Police shall consider all information received in regard to the recommended discipline. The Chief of Police shall render a timely written decision to the member and specify the grounds and reasons for discipline and the effective date of the discipline. Once the Chief of Police has issued a written decision, the discipline shall become effective.

234.  No Chief of Police or Acting Chief of Police reviewed the recommendations of the Lakewood Police Department nor the accompanying materials.

235.  Edgewater and the EPD also failed to follow and adhere to numerous other obligations in EPD Policy 1009, which were specifically delegated to the Chief of Police and not to the City Manager.

236.  On February 28, 2022, Ofc. Rees made a written request to Cmdr. Hamilton and City Mgr. Maples requesting her personnel file and all documents, transcripts, and recordings from Internal Affairs 2022-01, but he never responded and the EPD and Edgewater failed to provide the information.

237.  Ofc. Rees was not permitted to review her personnel file or any documents related to I.A. 2022-01 in violation of EPD policy 1009.6.2(h)(1).

238.  Male officers routinely engaged in identical and similar conduct as alleged against Ofc. Rees in Internal Affairs 2022-01, including releasing a suspect at the hospital without supervisor approval, and were not subjected to an Internal Affairs investigation or recommended for termination.

239.  Male officers were either not disciplined or counseled at all or were merely told to modify and change their reports based on a supervisor's review of their reports.

240.    Additionally, none of the booking officers were disciplined or investigated for failing to obtain the suspect's DNA sample or fingerprints at the Jefferson County Jail.

241.    Ofc. Rees followed policy and procedure to the best of her ability and corrected her report when she was instructed to do so by Sgt. Challis.

Ofc. Rees's Employment is Terminated

242.    City Mgr. Maples told Ofc. Rees her employment with Edgewater would be terminated and gave her the opportunity to resign.

243.    Pursuant to Edgewater Charter Art. 9.2(5), City Mgr. Maples hears the appeals and grievances from Edgewater employees under the supervision and control of Department Heads.

244.    City Mgr. Maples was the decision maker in determining the Findings and Dispositions of I.A. 22-01, the Proposed Discipline against Ofc. Rees, and would have been the ultimate decision maker for the outcome of any appeal Ofc. Rees should file against these decisions.

245.    As a result, Ofc. Rees's employment was terminated or constructively discharged on April 3, 2022.

P.O.S.T. Submission – June 2022

246.    After her termination of employment, Cmdr. Hamilton, the City of Edgewater, and the EPD caused to be submitted to the Office of the District Attorney for the First Judicial District, who was then required to file with the Colorado Department of Law, Peace Officer Standards and Training department, an untruthfulness notification pursuant to C.R.S. § 24-31-305(2.5).

247.    Until June 29, 2022, Ofc. Rees was not aware of these actions by Cmdr.

Hamilton, the EPD, and the City of Edgewater.

248.    On June 29, 2022, Ofc. Rees was called to testify on behalf of a victim in a case she had investigated while employed by the EPD and Edgewater.

249.    The District Attorney's Office was required to send a "Brady Disclosure" letter to Defense Counsel in that criminal case, notifying them that "[b]ased upon an internal investigation conducted by the Edgewater Police Department, the District Attorney's Office has been advised that this investigation revealed issues regarding Ms. Rees' credibility."

250.    Attached to the letter was a statement written by Cmdr. Hamilton that Ms. Rees had "made an untruthful statement," alleged acts "violating Department Policy," "made a deceptive statement to a supervisor," and omitted material information to conceal her actions.

251.    Ofc. Rees was not allowed to testify because of this letter, and a mistrial was determined by the Judge.

252.    The statements and actions made by Edgewater, the EPD, and Cmdr. Hamilton are retaliatory.

253.    Upon information and belief, Cmdr. Hamilton, the EPD, and/or Edgewater submitted information to the Colorado Department of Law that resulted in a statement that Ofc. Rees "Resigned While Under Investigation."

254.    Ofc. Rees has been unable to find employment in law enforcement since her termination from the EPD and Edgewater.

Other Denial of Privileges and Benefits of Employment

255.    Sgt. Forsythe was in charge of Ofc. Rees's scheduling and training for the vast majority of her employment.

256.    Sgt. Forsythe did not allow Ofc. Rees to attend training programs when she

requested training, even if she had previously been authorized to attend training.

257.    On one occasion, Chief Mackey approved Ofc. Rees to attend the International Police Mountain Bike Association training course, but Sgt. Forsythe would not allow Ofc. Rees the time off to attend.

258.    Between January 2020 and January 2022, Ofc. Rees requested to attend approximately 10-15 training courses, and Sgt. Forsythe did not allow her to attend a single one.

259.    Sgt. Forsythe would allow male officers with less seniority to attend trainings.

260.    During Ofc. Rees's employment at the EPD and Edgewater, the discrimination and retaliation she experienced caused her to suffer significant emotional and physical distress, including chronic hair loss, loss of sleep, and weight gain and loss. During and after her employment, Ofc. Rees underwent medical treatment for her physical and emotional distress.

261.    Ofc. Rees's employment was terminated. Alternatively, due to the illegal acts perpetuated against her, Defendants made her working conditions so difficult that a reasonable person in her position would be compelled to resign.

## V.    FIRST CLAIM FOR RELIEF
### (Sex Discrimination Under 42 U.S.C. § 2000e-2(a) against the City of Edgewater and EPD)

262.    Plaintiff incorporates by reference and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

263.    Defendants Edgewater and EPD discriminated against Ofc. Rees in the terms and conditions of her employment on the basis of her sex, female, and as a female Peace Officer, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), by:

  a.   Illegally treating Ofc. Rees disparately because she is female;

  b.   Subjecting her to different terms, conditions and privileges of employment than similarly situated male employees;

28

c.  Subjecting her to discipline, including repeated Internal Investigations not imposed against males;

d.  Subjecting her to a higher standard of scrutiny in the performance of her duties than similarly situated male employees; and

e.  Terminating her employment.

264.    Defendants Edgewater's and EPD's acts were intentional, malicious, and practiced with reckless indifference to Ofc. Rees's federally protected civil rights.

265.    At all times during her employment, Ofc. Rees was performing at or above the level of Defendants Edgewater's and EPD's reasonable expectations.

266.    Despite Ofc. Rees's qualifications and performance, she was discriminated against because of her sex.

267.    Defendants Edgewater and EPD are liable for the acts and omissions of their employees.

268.    Defendants Edgewater and EPD, either directly or by and through their employees, discriminated against Ofc. Rees on the basis of her sex, wherein Ofc. Rees suffered the injuries mentioned herein.

269.    As a proximate result of Defendants' unlawful and intentional conduct, Ofc. Rees has suffered, is now suffering, and will continue to suffer lost wages and benefits, emotional distress, mental anguish, humiliation, loss of reputation, and other economic and non-economic losses.

## VI.    SECOND CLAIM FOR RELIEF
### (Hostile Work Environment under Title VII, 42 U.S.C. § 2000e-2 against the City of Edgewater and EPD)

268.    Plaintiff incorporates by reference and realleges each and every allegation

contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

269.    Ofc. Rees is a female citizen of the United States and a member of a protected class under Title VII.

270.    Ofc. Rees was subject to harassment.

271.    The harassment was unwelcome and pervasive or severe enough to alter a term, condition, or privilege of her employment, creating an abusive work environment.

272.    The harassment was directed at Ofc. Rees because of her sex.

273.    Ofc. Rees complained about the harassment she endured, but it persisted unabated.

274.    The hostile work environment was created by her supervisors and others higher in the chain of command.

275.    Ofc. Rees suffered a tangible employment decisions.

276.    Defendants Edgewater and EPD are liable for the harassment because they knew or should have known of the harassment and failed to take remedial action.

277.    Defendants Edgewater and EPD, either directly or by and through their agents, created a hostile work environment involving harassment, wherein Ofc. Rees suffered the injuries stated herein.

278.    As a proximate result of Defendants' unlawful and intentional conduct, Ofc. Rees has suffered, is now suffering, and will continue to suffer lost wages and benefits, physical and emotional distress, mental anguish, humiliation, loss of reputation, and other economic and non-economic losses.

## VII.    THIRD CLAIM FOR RELIEF
### (Retaliation under Title VII against the City of Edgewater and EPD)

279.    Plaintiff incorporates by reference and realleges each and every allegation

contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

280.    Edgewater and EPD have official policies prohibiting retaliation in the workplace, including the policies that are more comprehensive than state or federal laws.

281.    Agents and employees of Defendants Edgewater and EPD intentionally discriminated and harassed Ofc. Rees in violation of Title VII.

282.    On numerous occasions Ofc. Rees complained, both verbally and in writing, of the discrimination and harassment to which she was subjected.

283.    Her complaints were made to her superiors according to the chain of command, including to City Mgr. Maples.

284.    After Ofc. Rees's complaints, Defendants Edgewater and EPD did not remediate the conditions of which Ofc. Rees complained, and agents of Defendants Edgewater and EPD took action against Ofc. Rees that a reasonable employee would have found materially adverse in retaliation for exercising her federally protected rights, including but not limited to:

    a.  Illegally treating Ofc. Rees disparately because she is female;

    b.  Subjecting her to different terms, conditions and privileges of employment than similarly situated male employees;

    c.  Subjecting her to discipline, including repeated Internal Investigations not imposed against males;

    d.  Subjecting her to a higher standard of scrutiny in the performance of her duties than similarly situated male employees; and

    e.  Terminating her employment.

285.    A causal connection exists between Ofc. Rees's complaints of discrimination and the treatment against her which Defendants would not have otherwise taken.

286.    Defendants are liable for the acts and omissions of their agents and employees.

287.    Defendants Edgewater and EPD, either directly or by and through their employees or agents, retaliated against Ofc. Rees and caused her severe injuries.

288.    As a proximate result of Defendants' unlawful and intentional conduct, Ofc. Rees has suffered, is now suffering, and will continue to suffer lost wages and benefits, physical and emotional distress, mental anguish, humiliation, loss of reputation, and other economic and non-economic losses.

## VIII.   FOURTH CLAIM FOR RELIEF
**(Equal Protection Violation of the 14th Amendment Under 42 U.S.C. § 1983 against the City of Edgewater and EPD)**

289.    Plaintiff incorporates by reference and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

290.    Ofc. Rees is a female citizen of the United States and a member of a protected classification based on sex.

291.    At all relevant times, Ofc. Rees had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be free from discrimination based on sex, free from sexual harassment, free from retaliation after complaining of unlawful discrimination, discriminatory treatment, and retaliation, and to have her superiors prevent and stop the harassment and retaliation.

292.    In May and June 2020, Ofc. Rees was a private citizen and no longer a public employee.

293.    Defendants Edgewater, EPD, Cmdr. Hamilton, and City Mgr. Maples violated Ofc. Rees's constitutional rights, causing a POST notice to be filed against her and alleging she lied and was deceptive.

294.    Defendants Edgewater and EPD violated the Equal Protection clause of the U.S. Constitution, Amendment XIV, by depriving Ofc. Rees of equal treatment on the basis of her gender in violation of 42 U.S.C. § 1983, including but not limited to the following:

    a.  Illegally treating Ofc. Rees disparately because she is female; subjecting her to different terms and conditions of employment than similarly situated male employees; subjecting her to discipline not imposed against males; and terminating her employment;

    b.  Failing to train and supervise their employees or agents on policies prohibiting harassment and discrimination;

    c.  Permitting supervisors to harass and discriminate against Plaintiff in the workplace because of her gender and demonstrate favoritism toward male individuals, including but not limited to not subjecting male employees to the same level of scrutiny and discipline as applied against Plaintiff;

    d.  Retaliating against Plaintiff for complaining about gender discrimination and harassment and subjecting Plaintiff to Internal Affairs investigations; and

    e.  Failing and refusing to take action to correct the effect of the discriminatory policies and practices complained of herein and/or failing to follow any corrective action policies and their own policies and procedures.

295.    Defendants Edgewater and EPD further deprived Ofc. Rees of equal protection by illegally terminating Ofc. Rees based on disparate application of Defendants' work rules or policies from similarly situated male employees.

296.    Defendants Edgewater and EPD acted under the color of law when they deprived Ofc. Rees of equal protection.

297.    Defendants Edgewater and EPD acted with deliberate or reckless indifference in denying Ofc. Rees equal protection, causing injury to Ofc. Rees.

298.    Defendants' actions are representative of an official policy or were taken by officials with final policy making authority.

299.    As a proximate result of Defendants' unlawful and intentional conduct, Ofc. Rees has suffered, is now suffering, and will continue to suffer lost wages and benefits, physical and emotional distress, mental anguish, humiliation, loss of reputation, and other economic and non-economic losses.

### IX.    FIFTH CLAIM FOR RELIEF
**(Equal Protection Violation of 14th Amendment under 42 U.S.C. § 1983 against Chief John Mackey, Commander Mark Hamilton, Sergeant Nate Geerdes, Sergeant Jason Forsythe, Sergeant Brandon Challis, and City Manager Dan Maples)**

300.    Plaintiff incorporates by reference and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

301.    Ofc. Rees is a female citizen of the United States and a member of a protected classification based on sex.

302.    At all relevant times, Ofc. Rees had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be free from discrimination based on sex, free from sexual harassment, free from retaliation after complaining of unlawful discrimination, discriminatory treatment, and retaliation, and to have her superiors prevent and stop the harassment and retaliation.

303.    In May and June 2020, Ofc. Rees was a private citizen and no longer a public employee.

304.    Defendants Mackey, Hamilton, and Maples violated Ofc. Rees's constitutional rights, causing a POST notice to be filed against her and alleging she lied and was deceptive.

305.    Defendants Mackey, Hamilton, Geerdes, Forsythe, Challis, and Maples violated the Equal Protection clause of the U.S. Constitution, Amendment XIV, by depriving Ofc. Rees of equal treatment on the basis of her gender in violation of 42 U.S.C. § 1983, including but not limited to the following:

    a.  Illegally treating Ofc. Rees disparately because she is female; subjecting her to different terms and conditions of employment than similarly situated male employees; subjecting her to discipline not imposed against males; and terminating her employment;

    b.  Harassing and/or discriminating against Plaintiff in the workplace because of her gender and demonstrating favoritism toward male individuals;

    c.  Retaliating against Plaintiff for complaining about gender discrimination and harassment and subjecting Plaintiff to Internal Affairs investigations; and

    d.  Failing and refusing to take action to correct the effect of the discriminatory policies and practices complained of herein and/or failing to follow any corrective action policies and their own policies and procedures.

306.    Defendant Mackey further deprived Ofc. Rees of equal protection by failing to charge Sgt. Geerdes with the sexual assault against her.

307.    Defendants Maples, Challis, and Hamilton further deprived Ofc. Rees of equal protection by causing the termination of Ofc. Rees based on disparate application of Defendants Edgewater's and EPD's work rules or policies from similarly situated male employees.

308.    Defendants Maples, Challis, Forsythe, Geerdes, Mackey, and Hamilton acted under the color of law when they deprived Ofc. Rees of equal protection.

309.    Defendants acted with deliberate or reckless indifference in denying Ofc. Rees
equal protection, causing injury to Ofc. Rees.

310.    The acts of Defendants Mackey, Hamilton, Geerdes, Forsythe, Challis, and
Maples were malicious, willful, and/or in gross disregard of Plaintiff's rights.

311.    As a proximate result of Defendants' unlawful and intentional conduct, Ofc. Rees
has suffered, is now suffering, and will continue to suffer lost wages and benefits, physical and
emotional distress, mental anguish, humiliation, loss of reputation, and other economic and non-
economic losses.

## X.    SIXTH CLAIM FOR RELIEF
**(Civil Conspiracy under 42 U.S.C. §§ 1983 and 1985 against Commander Mark Hamilton,
Sergeant Brandon Challis, and City Manager Dan Maples)**

312.    Plaintiff incorporates by reference and realleges each and every allegation
contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

313.    Ofc. Rees is a female citizen of the United States and a member of a protected
classification based on sex.

314.    At all relevant times, Ofc. Rees had a clearly established constitutional right under
the Fourteenth Amendment to the United States Constitution to be free from discrimination
based on sex, free from sexual harassment, free from retaliation after complaining of unlawful
discrimination, discriminatory treatment, and retaliation, and to be provided due process in
accordance with Edgewater's and EPD's policies and procedures.

315.    As stated herein, Defendants Hamilton, Challis, and Maples conspired and
intended to deprive Ofc. Rees of equal treatment based on their discriminatory animus due to her
sex in violation of §§ 1983 and 1985.

316.    Defendants Hamilton, Challis, and Maples all knew or should have known that the EPD had no Chief of Police, Acting Chief of Police, or Interim Chief of Police in place at the time of Plaintiff's investigation and termination.

317.    Defendants Hamilton, Challis, and Maples all knew or should have known that there was a moratorium or pause on Internal Affairs investigations while there was a vacancy in the office of Chief of Police.

318.    Defendants Hamilton, Challis, and Maples all knew or should have known that, pursuant to EPD Policy, City Code, and the Edgewater Charter, only the Chief of Police may hire or terminate from employment any subordinate employee, and that only the Chief of Police may review and recommend disciplinary charges and impose discipline based on an Internal Affairs investigation.

319.    Defendants Hamilton, Challis, and Maples conspired to subject Plaintiff to a retaliatory Internal Affairs investigation despite the moratorium or pause on Internal Affairs investigations and the absence of an Acting Chief of Police.

320.    Defendants Hamilton, Challis, and Maples specifically conspired to: (a) submit a Formal Complaint against Ofc. Rees; (b) submit that Formal Complaint for further Internal Affairs investigation; (c) issue Findings and Dispositions against Ofc. Rees; (d) deprive Ofc. Rees of her rights to review evidence and for pre- and post-determination hearings; (e) and recommend her employment be terminated.

321.    These overt acts were committed in furtherance of the object of their conspiracy—to deprive Ofc. Rees of equal protection under the law on the basis of sex.

322.    Defendants Hamilton, Challis, and Maples conspired to deprive Plaintiff of her federally protected right for equal protection and caused injury to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests the Court to find in her favor and against Defendants, and grant the following relief:

1.      Declare that Defendants' acts and practices complained of herein are in violation of Title VII and the U.S. Constitution, Amendment XIV, and constituted intentional and/or willful conduct by Defendants;

2.      Enjoin and permanently restrain these violations of Title VII and the U.S. Constitution, Amendment XIV;

3.      Enter Declaratory Relief, pursuant to 28 U.S.C. § 2202, Fed.R.Civ.P. Rules 57, 70, and 71, causing Edgewater and the EPD to Enjoin, Declare, and Order the City of Edgewater and the Edgewater Police Department to remove all information, whether submitted directly or indirectly by Defendants, with the Colorado Department of Law, Criminal Justice System – Colorado POST, clearing Plaintiff's record with POST of any information, including the retraction of the information submitted to Office of the First Judicial District Attorney of Colorado;

4.      Direct Defendants to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practices and tortious conduct are eliminated from their workplace;

5.      Award Plaintiff back pay and actual damages in an amount to be determined at trial to compensate her for lost wages, benefits, and employment opportunities;

6.      Award Plaintiff compensatory damages for her physical distress;

7.      Award Plaintiff compensatory damages for her emotional distress, pain, suffering, and mental anguish;

8.      To the extent permitted by law, order Defendants to pay punitive damages to Plaintiff, in amounts to be determined at trial, as punishment for Defendants' intentional conduct carried out with malice or reckless disregard for Plaintiff's federally protected rights;

9.      Award Plaintiff a sum of monies to offset the taxable effect of her damage award;

10.     Retain jurisdiction of this matter to ensure full compliance with the Orders of this Court;

11.     Award Plaintiff reasonable attorneys' fees and costs of this litigation;

12.     Award Plaintiff pre-judgment and post-judgment interest and the costs of this action together with reasonable expert witness fees as provided by law; and

13.     Grant such other and further relief as this Court deems necessary and proper.

### **Demand for Jury Trial**

Plaintiff McKinzie Rees hereby demands a trial by jury.

s/ Thomas J. Arckey
*Thomas J. Arckey*
ARCKEY AND ASSOCIATES, LLC
7887 East Belleview Avenue, Suite 1100
Denver, Colorado 80111
(303) 798-8546
Email: tja@arlaw.us
Attorney for Plaintiff
