IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-CV-01626-PAB-NRN

**MCKINZIE REES**

        Plaintiff,

v.

**CITY OF EDGEWATER, CHIEF JOHN MACKEY, in his individual capacity, COMMANDER MARK HAMILTON, in his individual capacity, SERGEANT JASON FORSYTHE, in his individual capacity, SERGEANT BRANDON CHALLIS, and CITY MANAGER DAN MAPLES, in his individual capacity.**

        Defendants.

---

**[PROPOSED] SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE
AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Scheduling Conference occurred on October 10, 2023, at 10:30 a.m. via phone, per the setting order [ECF 6].

| | |
|---|---|
| Counsel for Plaintiff: | Thomas J. Arckey<br>Arckey & Associates, LLC<br>7887 East Belleview Ave.<br>Suite 1100<br>Denver, CO 80111<br>Telephone: (303) 798-8546 |
| Counsel for Defendants: | Marni Nathan Kloster and/or<br>Emily Miller<br>Nathan Dumm & Mayer P.C.<br>7900 E. Union Ave.<br>Suite 600<br>Denver, CO 80237<br>Telephone: (303) 691-3737 |

## 2. STATEMENT OF JURISDICTION

Plaintiff asserts rights under Title VII; 42 U.S.C. §§ 2000e-2 and 2000e-2(a); 42 U.S.C. §§ 1983, 1985, and 1986. Accordingly, Plaintiff asserts the Court has jurisdiction over those claims under 28 U.S.C. §§ 1331, 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3).

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. <u>Plaintiff</u>:

McKinzie Rees ("Ofc. Rees") was employed by the City of Edgewater ("Edgewater") and the Edgewater Police Department ("EPD") as a Police Officer beginning on July 3, 2019. From October of 2019 to June of 2020, Ofc. Rees was the only female police officer at the EPD. From June 2020 through April 3, 2022, Ofc. Rees was one of only three female police officers at the EPD. During her employment with Edgewater and the EPD, Ofc. Rees was harassed, discriminated against because of her sex, and retaliated against for reporting the hostile work environment she was experiencing. Her employment was terminated on April 3, 2022, in violation of her rights, the Edgewater City Code and Home Rule Charter, and EPD Policy.

On December 13, 2019, after attending the Edgewater Christmas party, Ofc. Rees was sexually assaulted by Sergeant Nate Geerdes ("Sgt. Geerdes"), who was a supervisor of and in a superior role to Ofc. Rees. Because she was a recent hire, Ofc. Rees did not make a formal report and feared retaliation if she reported a fellow police officer for sexual assault. Instead, she informed her coworker, Officer Scott Green ("Ofc. Green"). In early 2020, Ofc. Green informed Sergeant Jason Forsythe ("Sgt. Forsythe") of the sexual assault of Ofc. Rees by Sgt. Geerdes. Sgt. Forsythe reported the sexual assault to Commander Mark Hamilton ("Cmdr. Hamilton"). Cmdr. Hamilton failed to report the sexual assault in violation of Edgewater and EPD policies.

The harassment of Ofc. Rees began in January 2020, after she started a new shift with

Corporal Robert Brink ("Cpl. Brink"). Cpl. Brink frequently would not respond to calls for service, forcing Ofc. Rees to answer the majority of the calls and prepare the majority of the incident reports. When Ofc. Rees reported this to their supervisor, Sgt. Forsythe, the problems worsened. Ofc. Rees then reported the issues to Cmdr. Hamilton. In retaliation, Sgt. Forsythe demoted her to working the night shift. Cmdr. Hamilton did not take any action to address the harassment and hostile work environment created by Cpl. Brink and Sgt. Forsythe.

In November of 2020, Ofc. Green informed Chief John Mackey ("Chief Mackey") that Sgt. Geerdes had sexually assaulted Ofc. Rees in December 2019. On November 19, 2020, Sgt. Forsythe and Cpl. Brink required Ofc. Rees to meet with them in council chambers to discuss the sexual assault. Ofc. Rees was compelled to respond to Sgt. Forsythe because he was her superior officer and was directing her to respond. Ofc. Rees was also required to meet with Cmdr. Hamilton and Nichole Kirkpatrick ("Ms. Kirkpatrick"), Finance Director and Administrative Services Director for Edgewater, and Carmen Beery ("Ms. Beery") from the Edgewater City Attorney's office. Because she feared further retaliation and stigmatization, Ofc. Rees consistently reiterated to each of them that she did not want to file a formal complaint.

Instead of listening to her wishes as the victim and her repeated concerns over retaliation, Edgewater and the EPD intimidated and lied to Ofc. Rees to obtain a statement from her in their investigation of Sgt. Geerdes. As a result of this investigation, Sgt. Geerdes resigned his employment in March 2021. Ofc. Rees was subsequently retaliated against, harassed, and told by Chief Mackey that she had "ruined a good cop's career."

As further retaliation, Sgt. Forsythe began overly scrutinizing Ofc. Rees's work, holding her to high standards which he did not require of similarly situated male officers, and frivolously submitting her reports to Internal Affairs for investigation. He also frequently changed Ofc.

Rees's schedule, moving her to the night shift despite her seniority, and making it difficult for her to have a healthy work-life balance. Sgt. Forsythe did not allow Ofc. Rees to participate in the same privileges as male officers, such as training programs and ride-alongs.

On February 20, 2021, Ofc. Rees sent a formal complaint to Cmdr. Hamilton regarding the retaliation from and the hostile work environment created by Sgt. Forsythe and Cpl. Brink. Her complaint was not fully investigated and was found to have no merit. In March 2021, Ofc. Rees met with City Manager Dan Maples ("City Mgr. Maples") to discuss the hostile work environment. City Mgr. Maples did not require the commencement of any investigation into Ofc. Rees's complaints, take any corrective measures to rid Ofc. Rees's workplace of the hostile work environment, or institute any disciplinary action against Sgt. Forsythe, Cpl. Brink, or any command staff. The treatment of Ofc. Rees did not improve, and the discrimination, retaliation, and harassment continued.

Commander George Mumma ("Cmdr. Mumma") joined the EPD in August 2021 and, in September 2021, he asked Edgewater to launch an investigation into the hostile work environment on Ofc. Rees's behalf. In retaliation, Sgt. Forsythe, Sergeant Brandon Challis ("Sgt. Challis"), and Cmdr. Hamilton subjected Ofc. Rees to another internal investigation regarding a violation of the EPD social media policy and issued a harsher punishment than that received by male officers who had violated the same policy. On March 9, 2022, Ofc. Rees was notified that the investigation into her claims of a hostile work environment had substantiated some of her allegations against Sgt. Forsythe; however, he was not disciplined or counseled after these findings were issued.

Due to Chief Mackey's resignation in December 2021, internal investigations were being delayed until an Acting or Interim Chief of Police was assigned or a new Chief of Police was

hired. On or about February 10, 2022, Cmdr. Mumma resigned his employment. On February 16, 2022, Ofc. Rees was notified by Cmdr. Hamilton of an internal investigation into an arrest she had made. This investigation began after Sgt. Challis conducted a "Formal Complaint" regarding Ofc. Rees's report of the incident. The EPD still subjected Ofc. Rees to an internal investigation despite the policy delaying them in the absence of a Chief of Police or Acting Chief of Police. Additionally, this investigation began a mere six days after Cmdr. Mumma, Ofc. Rees's only advocate, left the EPD.

      The allegations made against Ofc. Rees in this investigation were for conduct which male officers routinely engaged in without being subjected to investigation. Male officers were neither disciplined nor counseled for these same actions. Ofc. Rees followed policy and procedure to the best of her ability and was held to a higher standard than male officers in order to retaliate and discriminate against her due to her sex. The investigation was completed in March 2022, and on April 3, 2022, City Mgr. Maples issued his findings that Ofc. Rees had violated policy. He proposed termination for his findings but stated that Ofc. Rees could choose to resign. Ofc. Rees's employment was terminated. Alternatively, due to the illegal acts perpetuated against her, Defendants made her working conditions so difficult that a reasonable person in her position would be compelled to resign.

      City Mgr. Maples unlawfully installed himself as *de facto* Police Chief in order to terminate Ofc. Rees's employment in violation of Colorado law and Edgewater's and EPD's own rules, regulations, and policies. Only the Chief of Police, who is required to be a certified Peace Officer, can terminate a subordinate employee. City Mgr. Maples is not a certified Peace Officer. Ofc. Rees also made a request to review her personnel file and any documents related to the investigation but was not permitted to do so in further violation of EPD policy.

After her termination of employment, and in further retaliation, Cmdr. Hamilton, the City of Edgewater, and the EPD caused a notification to be submitted to the Office of the District Attorney for the First Judicial District. A subsequent filing was made with the Colorado Department of Law's Peace Officer Standards and Training department pursuant to C.R.S. § 24-31-305(2.5). A statement written by Cmdr. Hamilton stated that Ofc. Rees had "made an untruthful statement," alleged acts "violating Department Policy," "made a deceptive statement to a supervisor," and omitted material information to conceal her actions. Cmdr. Hamilton, the EPD, and/or Edgewater also submitted information to the Colorado Department of Law that resulted in a statement that Ofc. Rees "Resigned While Under Investigation." Ofc. Rees has been unable to find employment in law enforcement since her termination from the EPD and Edgewater.

During Ofc. Rees's employment at the EPD and Edgewater, the discrimination and retaliation she experienced caused her to suffer significant emotional and physical distress, including chronic hair loss, loss of sleep, and weight gain and loss. During and after her employment, Ofc. Rees underwent medical treatment for her physical and emotional distress.

    b.    <u>Defendants</u>:

The Defendants deny that they engaged in any wrongdoing with respect to Plaintiff and they specifically deny the claims set forth in Plaintiff's Amended Complaint. The Defendants took any concerns reported to them seriously, even when Plaintiff did not act in an appropriate and/or consistent manner. Further, all actions taken by the Defendants involving Plaintiff were legitimate, non-discriminatory and non-retaliatory. Additionally, Plaintiff's employment with the City ended after a third party agency investigated specific conduct of Plaintiff and it was determined that Plaintiff engaged in multiple, serious violations of policy, including being

inaccurate and/or dishonest in both a formal police report, as well as an investigative interview. The Defendants incorporate the defenses it will set forth in their responsive pleading(s), which will be timely filed, herein.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

1. From in or about June 2019 to on or about April 3, 2022, Plaintiff was employed by the City of Edgewater as a police officer.

2. The City of Edgewater is a city in the state of Colorado.

3. The Edgewater Police Department is a Department within the City which engages in law enforcement.

### 5. COMPUTATION OF DAMAGES

**Plaintiff**: Prior to the engagement of a financial professional, Plaintiff estimates her losses to be as follows:

Estimated Back Pay: Plaintiff seeks back pay pursuant to 42 U.S.C. §§ 2000e-5(g) and 6, and 42 U.S.C. § 1981(a). As an officer of the Edgewater Police Department, at the time of her employment termination Plaintiff was earning $32.81 per hour. In 2019, Plaintiff earned $33,232. In 2020, Plaintiff earned $66,836. In 2021, Plaintiff earned $65,862. Had Plaintiff's employment not been terminated, her 2022 earnings are estimated to have been $67,000. Plaintiff averages the years 2020-2022 and computes an average income of $66,566 per year as the basis for her annual compensation. After her termination in April 2022, Ms. Rees remained unemployed until May 23, 2022, when she obtained employment earning $21.64 per hour as a Case Manager for Rocky Mountain Human Services. Her total earnings in 2022 were approximately $26,256. Her estimated back pay loss in 2022 is estimated to be $40,310. Her

7

total earnings in 2023 are estimated to be $45,000. Her estimated back pay loss in 2023 is estimated to be $21,566. Plaintiff's total back pay loss through 2023 is estimated at $61,876.

<u>Front Pay</u>:  Plaintiff seeks reinstatement pursuant to 42 U.S.C. § 2000e-5(g)(1) and 29 U.S.C. § 2617(a)(1)(B). In lieu of reinstatement, Plaintiff seeks front pay pursuant to 42 U.S.C. § 2000e-5(g), 29 U.S.C. § 2617(a), and 42 U.S.C. § 1981a(1). The engagement of a professional will be necessary to calculate this amount.

<u>Compensatory and Punitive Damages</u>:  Ms. Rees has undergone counseling and therapy as a result of Defendants' actions. Plaintiff seeks compensatory damages for emotional distress pursuant to Title VII and 42 U.S.C. § 1981a(1). Upon a demonstration of Defendants engaging in discriminatory practices with malice or with reckless indifference to her federally protected rights, she seeks punitive damages. Plaintiff seeks compensatory and punitive damages in excess of $300,000.

<u>Incidental and Consequential Damages</u>:  Plaintiff seeks additional monies for incidental and consequential damages and equitable relief for out-of-pocket medical expenses, co-pays, and COBRA expenses as permitted by 42 U.S.C. § 2000e-5(g)(1) and 42 U.S.C. §§ 1981(a) and (b).

<u>Attorneys' Fees and Costs</u>:  Plaintiff seeks an award of reasonable attorneys' fees, reasonable expert witness fees, other costs of this action, and interest pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §§ 1981, 1981a, and 1988.

**Defendants**:  The Defendants do not currently seek damages, but do reserve their right to seek attorney fees and costs.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(F)

a.      Date of Rule 26(f) meeting: September 28, 2023.

b.      Names of each participant and party he/she represents:

Plaintiff: Thomas J. Arckey, Esq.

Defendants: Marni Nathan Kloster, Esq.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made:

The deadline for the parties to make Rule 26(a)(1) disclosures is October 9, 2023.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):

None.

e. Statement concerning any agreements to conduct informal discovery:

None.

f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system:

The parties shall use a unified exhibit numbering system for deposition exhibits. At the time of their Rule 26(a)(1)(A) disclosures, the parties have agreed to exchange all documents, or all documents listed in categories, in electronic searchable PDF format and identify all documents by bates numbering. The parties agree that after production of documents in PDF format, either party may request certain documents in native format, in accordance with Fed. R. Civ. P. 26(b)(2)(B), and that such requests will be evaluated on a request-by-request basis. Any unresolved dispute shall be in accordance with the Court's Practice Standards on General Discovery Disputes.

g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in

electronic form:

The parties anticipate that their claims and defenses will involve electronically stored information (ESI), though, at this time, the parties do not believe it is likely to be extensive. The parties agree to apply the Sedona principles relating to electronically stored information and searches thereof. The parties anticipate disclosure and discovery in this case of emails, electronically stored personnel files, other electronically stored documents, and records of alleged damages. Any disclosures of documents or information claimed as privileged or protected shall be governed by Fed. R. Civ. P. 26(b)(5)(B), and pursuant to Federal Rules of Evidence 502(b), with reasonable precautions taken. The parties anticipate producing this information initially in searchable PDF format but if issues develop, they will work to resolve any such issues and then bring any remaining dispute to the Court as soon as practicable. To the extent relevant electronically stored information exists, the parties will preserve and produce all such data. The parties will file either a stipulated motion for protective order or contested motion for a protective order with the Court within seven (7) days after the 26(f) attorney meeting.

h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:

The parties engaged in voluntary mediation as part of the EEOC administrative process. The parties agree to reassess continually the prospects of settlement as this case progresses and that appropriate discussions may be entertained during or after discovery in the case.

## 7. CONSENT

The deadline to consent to the Magistrate Judge's jurisdiction is October 3, 2023. All parties have not consented to the exercise of jurisdiction of the Magistrate Judge.

## 8. DISCOVERY LIMITATIONS

Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:

a. The maximum number of depositions to be taken by each side is ten (10). This case involves six (6) Defendants and various fact witnesses.

b. The parties request that the maximum number of interrogatories for each side be ~~twenty-five (25)~~ thirty-six (36), including all discrete subparts.

c. Limitations which any party proposes on the length of depositions: The parties believe the majority of the fact witness depositions can be completed in four hours or less; however, no deposition shall extend beyond seven (7) hours pursuant to Fed. R. Civ. P. 30(d). For parties, depositions shall not exceed 7 hours, all other fact depositions are limited to 4 hours. For retained experts, depositions shall not exceed 7 hours.

d. Limitations which any party proposes on the number of requests for production and/or requests for admission: Each side will be limited to ~~twenty-five (25)~~ thirty-six (36) requests for production and ~~twenty-five (25)~~ thirty-six (36) requests for admission.

e. Deadline for service of Interrogatories, Requests for Production of Documents, and/or Admissions: 45 days prior to the discovery cut-off

to permit the parties time before the discovery cut-off to address any outstanding discovery issues.

f.  Other Planning or Discovery Orders:
The parties will execute an appropriate stipulated protective order for the Court's approval to address privacy and confidentiality issues related to documents and information produced and obtained during and after this litigation.

## 9. CASE PLAN AND SCHEDULE

a.  Deadline for Joinder of Parties and Amendment of Pleadings: November 24, 2023.

b.  Discovery Cut-off: June 10, 2024.

c.  Dispositive Motion Deadline: August 2, 2024.

d.  Expert Witness Disclosure:

   1. The parties shall identify anticipated fields of expert testimony, if any.
   Plaintiff's anticipated fields of expert testimony: Accounting/damages and any rebuttal to Defendants' expert testimony.
   Defendants' anticipated fields of expert testimony may be: police and/or municipal practice; accounting and/or damages; medical and/or mental health; any rebuttal to Plaintiff's experts and other potentially relevant topics.

   4. Limitations which the parties propose on the use or number of expert witnesses: Each ~~party~~ side shall be limited to two (2) expert witnesses, not counting rebuttal expert witnesses.

   5. The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before April 10, 2024. This date includes disclosure

of information applicable to "Witnesses Who Must Provide a Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).

6. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before May 10, 2024. This date includes disclosure of information applicable to "Witnesses Who Must Provide a Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C). Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the Rule will be allowed by stipulation unless the stipulation is in writing and approved by the court. In addition to the requirements set forth in Rule 26(a)(2)(B)(i)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.

e. Identification of Persons to Be Deposed:

Based on the information currently available to them, the parties have identified the following witnesses as likely to be deposed:

Plaintiff's Depositions:

| *Name of Deponent* | *Date of Deposition* | *Time of Deposition* | *Expected Length of Deposition* |
|---|---|---|---|
| City of Edgewater 30(b)(6) | | | 5-7 hours |
| John Mackey | | | 4-6 hours |
| Mark Hamilton | | | 4-6 hours |

| Jason Forsythe |  |  | 4-6 hours |
| Brandon Challis |  |  | 4-6 hours |
| Dan Maples |  |  | 4-6 hours |
| George Mumma |  |  | 4-6 hours |
| Nate Geerdes |  |  | 4-6 hours |
| Randy Palmer |  |  | 4-6 hours |

Defendants' Depositions:

| *Name of Deponent* | *Date of Deposition* | *Time of Deposition* | *Expected Length of Deposition* |
|---|---|---|---|
| McKinzie Rees |  |  | 7 hours |
| TBD |  |  |  |

As discovery has not yet begun in this case, this is not an exhaustive list of all deponents. As discovery continues, additional witnesses may be added to or removed from these lists. Each Party reserves the right to seek leave of court to modify the number of depositions that exceed ten (10) depositions per side.

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times: Telephonic Status Conference is set for March 7, 2024, at 11:00 a.m. before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Byron G. Rogers Courthouse, 1929 Stout Street, Denver, Colorado 80294. The Court will set a Final Pretrial Conference at that time. Five minutes prior to the start of the hearing, the parties shall call the conference line (888) 398-2342, Access Code 5755390# to participate.

b. A final pretrial conference will be held in this case on _____ at _____ o'clock _.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial coference.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement:

None at this time.

b. Anticipated length of trial and whether trial is to the court or jury:
Trial to a jury and the parties anticipate that trial will last five (5) days.

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439:
None.

## 12. NOTICE TO COUNSEL

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

Dated at Denver, Colorado, this 10th day of October 2023.

BY THE COURT:

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge

APPROVED:

| | |
|---|---|
| *s/ Thomas J. Arckey* | *s/ Marni Nathan Kloster* |
| Thomas J. Arckey | Marni Nathan Kloster |
| Arckey & Associates, LLC | Emily Miller |
| 7887 East Belleview Ave. | Nathan Dumm & Mayer P.C. |
| Suite 1100 | 7900 E. Union Avenue, Suite 600 |
| Denver, CO 80111 | Denver, CO 80237-2776 |
| Telephone: (303) 798-8546 | Telephone: (303) 757-5106 |